IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DIAMOND ASSETS LLC

        Plaintiff,

        v.                                          Case Number: 18-cv-568

E-TECH ASSET LLC,

        Defendant.

---

## COMPLAINT

---

    Plaintiff, DIAMOND ASSETS LLC, by its attorneys Smith Keane LLP, by Garet K. Galster and Melissa A. Spindler, for its Complaint against Defendant E-TECH ASSET LLC alleges as follows:

### THE PARTIES

    1.    Plaintiff Diamond Assets LLC (hereinafter "Diamond"), is a Wisconsin limited liability corporation having a principal place of business address of 1850 Putman Parkway, Milton, WI 53563.

    2.    Upon information and belief, Defendant E-Tech Asset LLC (hereinafter "E-Tech") is a California limited liability company having a principal place of business address of 495 Madera Ave., San Jose, CA 95112.

### JURISDICTION AND VENUE

    3.    This action arises under the trademark laws of the United States, 15 U.S.C. § 1051 et seq. and the laws of the State of Wisconsin and is a complaint for trademark infringement and

unfair competition. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

4.      This Court has personal jurisdiction over Defendant because Defendant is engaged in substantial and not isolated activities within this state.  Indeed, Defendant's prior website indicated that "We pay schools and organizations throughout all 50 states for their existing Apple devices so they have the means to purchase new Apple equipment."

5.      Venue in this judicial district is proper pursuant to 28 U.S.C. §§1391(b)(1) and (c) and 1400(a), because Defendant resides in this district.

6.      Venue in this judicial district also is proper pursuant to 28 U.S.C. §1391(b)(2) because the acts complained of below took place within this judicial district.

## FACTUAL BACKGROUND AND NATURE OF THE CASE

### About Diamond

7.      Diamond has, since at least March 2014, used in commerce the common law service mark DIAMONDASSETS, often times in stylized form of DIAMOND*ASSETS* (italicized ASSETS).

8.      Diamond has, since at least March 2014, used in commerce the common law compound service mark of a diamond (the "Diamond Logo"), as depicted here, in conjunction with its DIAMONDASSETS mark (collectively, the "Diamond Service Mark"):



9.      Diamond has, for more than two years, used in commerce the following trade dress (the "Process Trade Dress") on the webpages hosted at the top-level domain of http://www.diamond-assets.com/ ("Diamond Website"):



10.    The Diamond Website is hosted on computer servers located in the state of Wisconsin.

11.    Diamond has, for more than two years, used in commerce the following trade dress (the "Device Trade Dress") on the Diamond Website:



12.    Diamond has, for more than two years, used in commerce the following combination of words on its webpage located at http://www.diamond-assets.com/about (the "Diamond About Us Text"):

> "About Us
>
> Diamond Assets partners with organizations in the education, corporate, and government sectors to maximize the residual value of their Apple devices.
>
> Unlike recyclers and buy-back companies, we go beyond the transaction by coaching and guiding our customers toward a cycle of financial sustainability.
>
> Our white-glove service, enhanced trade-in values, and dedicated account management makes it easy for organizations to refresh to the latest technology."

13. Diamond has, for more than two years, used in commerce the following trade dress (the "Diamond Home Page Layout") on the Diamond Website:  Horizontal sections of alternating white and gray, generally including, in order from top to bottom, a Trade-Up section (including the Device Trade Dress), a Streamlining section, a Maximizing Value section, and a Process section (including the Process Trade Dress).

14. Diamond has, since at least March 2014, rendered services comprising purchase, sales, and refurbishment of Apple® computing devices, serving schools and other organizations.

15. Diamond has, since at least March 2014, advertised its services using the Diamond Service Mark and the Diamond Logo.

16. Diamond has, for more than two years, advertised its services on its website using the Diamond Service Mark, the Diamond Logo, the Process Trade Dress, the Device Trade Dress, the Diamond About Us Text, and the Diamond Home Page Layout, on the Diamond Website.

17. By virtue of its continued rendering of its services and exclusive advertising using the Diamond Service Mark and the Diamond Logo Diamond has garnered and owns common law trademark rights in each of them and collectively.

18. By virtue of its continued rendering of its services and exclusive advertising using the Diamond Service Mark, the Diamond Logo, the Process Trade Dress, the Device Trade Dress, the Diamond About Us Text, and/or the Diamond Home Page Layout, on the Diamond Website, Diamond has garnered and owns exclusive common law trademark or trade dress rights in each and every one of them, in combinations of more than one of them, and collectively.

**Defendant's Knowledge of, and Access to, the Diamond Website**

19.     Diamond had a customer called Alsan Marketing, LLC ("Alsan"), which was and is controlled by Michael Santos Urcia, who is now the President and CEO of Defendant.

20.     Diamond sold more than one million dollars ($1,000,000.00) worth of refurbished computer hardware to Alsan.

21.     Accordingly, through his ownership and direct dealings with Diamond here in the state of Wisconsin, Mr. Urcia (and thus, Defendant) was and is fully aware of and accessed the Diamond Website.

22.     At a trade show, representatives of Diamond noticed brochures appearing to be from Defendant offering services competitive to Diamond, utilizing marketing materials that appeared to be substantially pirated from Diamond's Website.

23.     During a conference call including a plurality of representatives of Diamond and Mr. Urcia, Diamond asked for clarification of Mr. Urcia's intentions based on the appearance to Diamond that Mr. Urcia had pirated Diamond's marketing materials.

24.     On the conference call, Mr. Urcia expressed indifference to Diamond's intellectual property rights in its marketing materials and indicated that "It's a free world.  I'll do what I want."

25.     As a result of Mr. Urcia's indifference, Diamond ceased providing products and services to any entity known or thought to be affiliated with Mr. Urcia.

**Defendant's Acts**

26.     To date Defendant's competition with Diamond includes outright taking, copying and/or imitation by Defendant of Diamond's website, and individual aspects thereof.

27.     On or about February 27, 2018, nearly two years after the Diamond Website went live, Defendant created the top-level domain name of etech-assets.com.

28.     Prior to at least June 20, 2018, Defendant owned and controlled the web pages hosted at the top-level domain of https://www.etech-assets.com/ (the "Former ETECH Website").

29.     Defendant used in commerce on the Former ETECH Website the service mark ETECHASSETS, often times in stylized form of ETECH*ASSETS* (italicized ASSETS).

30.     Defendant used in commerce on the Former ETECH Website the service mark of a diamond (the "E-Diamond Logo"), as depicted here, in conjunction with the ETECHASSETS mark:



31.     Defendant used in commerce on the Former ETECH Website the following trade dress (the "ETECH Process"):



32.     Defendant used in commerce on the Former ETECH Website the following image (the "Device Layer Photo"):

6



33.     Defendant used in commerce on the Former ETECH Website the following

combination of words on the webpage hosted at https://etech-assets.com/about-us/ (the "ETECH

About Us Text"):

> "About Us
>
> ETech-Assets partners with schools, businesses and organizations throughout the nation to help capture the maximum residual value of their Apple equipment.
>
> Unlike recyclers, buy-back, and IT asset companies, we do not risk the valuable cloud data of your devices. A DOD 3 pass with a certificate of data erasure will be provided to ensure your data is completely wiped.
>
> We go beyond the point of purchase by coaching and guiding our customer towards financial sustainability, support your local community with collaborations with your foundations or LifeBridge and explore a multiyear life cycle plan that is aligned with your focus on excellence in technology.
>
> Our full white glove pickup service, enhanced trade-in solutions, and personalized dedicated account manager makes it easy for your organization to upgraded to the latest technology so that you may be positioned to launch into 21st century careers."

34.     Defendant used in commerce on the Former ETECH Website at least the

following trade dress (the "ETECH Home Page Layout"): Horizontal sections of alternating

white and gray, generally including, in order from top to bottom, a Trade-In section, a

Streamlining section (including the Device Layer Photo), a Maximizing Value section, and a

Process section (including the ETECH Process).

35.     Defendant used in commerce on the Former ETECH Website the following

device (the "ETECH Review Count"):



36.     Defendant used in commerce on the Former ETECH Website the following

descriptions (the "ETECH Reviews"):



37.     Defendant used in commerce on the Former ETECH Website the following

description (the "ETECH Kiosk Ad"):



38.     Upon information and belief, likely to have evidentiary support after a reasonable

opportunity for further investigation or discovery, Defendant has or has attempted to, since its

inception, rendered services comprising purchase, sales, and refurbishment of Apple®
computing devices, serving schools and other organizations.

39.     Defendant has or has attempted to, since the Former ETECH Website went live
until about the latter half of June 2018, advertised its services on its website using the
ETECH*ASSETS* service mark, the E-Diamond Logo, the ETECH Process, the ETECH Device
Trade Dress, and the ETECH Home Page Layout, on the Former ETECH Website.

40.     Such advertisements have been undertaken at least negligently by Defendant with
the effect of creating a false association with Diamond, of reducing Defendant's advertising
expenditures, soliciting Diamond's customers, and causing competitive harm to Diamond.

41.     Upon information and belief, likely to have evidentiary support after a reasonable
opportunity for further investigation or discovery, such advertisements have been undertaken by
Defendant with the intent to create a false association with Diamond, to reduce Defendant's
advertising expenditures, to solicit Diamond's customers, and to cause competitive harm to
Diamond.

42.     In or about the latter half of June 2018, Defendant changed the contents of
webpages hosted at the top-level domain of https://www.etech-assets.com/ (the "Current Etech
Website").

43.     Defendant has used and continues to use in commerce on the Current Etech
Website the service mark ETECHASSETS, often times in stylized form of ETECH*ASSETS*
(italicized ASSETS).

44.     Defendant has used and continues to use in commerce on the Current Etech
Website the service mark of a diamond (the "E-Diamond Logo"), as depicted here, in
conjunction with the ETECHASSETS mark:



45.     Defendant has used and continues to use in commerce on the Current Etech Website the following trade dress (the "New ETECH Process"):



46.     Defendant has or has attempted to, since the Current Etech Website went live, advertised its services on its website using the ETECH*ASSETS* service mark, the E-Diamond Logo, and the New ETECH Process, on the Current Etech Website.

47.     Such advertisements have been undertaken at least negligently by Defendant with the effect of creating a false association with Diamond, of reducing Defendant's advertising expenditures, soliciting Diamond's customers, and causing competitive harm to Diamond.

48.     Upon information and belief, likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, such advertisements have been undertaken by Defendant with the intent to create a false association with Diamond, to reduce Defendant's advertising expenditures, to solicit Diamond's customers, and to cause competitive harm to Diamond.

49.     Upon information and belief, likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, Defendant has directly solicited customers of Diamond.

50.     Upon information and belief, likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, Defendant has directly competed with Diamond in bids to supply their respective services.

**Count I**
Unfair Competition/Use of Word, Term, Name, Symbol, or Device Combination
15 U.S.C. § 1125(a)
**ETECH*ASSETS* Stylized Mark**

51.     Diamond realleges and incorporates by reference paragraphs 1-50 of the Complaint.

52.     Defendant's use of ETECH*ASSETS* stylized mark for both related and/or identical goods and services as those offered by Diamond is likely to cause confusion, or to cause mistake as to the source of or association of Defendant's goods and services with Diamond, which provides such services under the DIAMOND*ASSETS* stylized mark.

53.     The ETECH*ASSETS* stylized mark is confusingly similar to the DIAMOND*ASSETS* stylized mark.  Namely, the marks are confusingly similar in appearance and suggestion because both marks include block text in a distinctive lime green color, combining to form a two-part compound mark ending in the same italicized word.

54.     Upon information and belief, likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, the geographic area of Defendant's use of the ETECH*ASSETS* stylized mark overlaps with the geographic area of Diamond's use of the DIAMOND*ASSETS* stylized mark.

55.     Upon information and belief, likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, Defendant intended to palm off its services as services offered by, and/or insinuate a connection with, Diamond.

56.     The services offered by Diamond and offered or attempted to be offered by Defendant are at least partially identical.

57.     Without permission, Defendant has used the ETECH*ASSETS* stylized mark on its website to advertise its services.

58.     Diamond never granted Defendant any license to use the ETECH*ASSETS* stylized mark, or any portion thereof.

59.     Defendant continues to use the ETECH*ASSETS* stylized mark on its website to advertise its services.

60.     The foregoing acts of the Defendant constitute unfair competition and false designation of origin in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

61.     By reason of the foregoing acts of Defendant, Diamond believes that it is or is likely to be damaged by such acts. Defendant's acts, unless enjoined, will cause Diamond continuing irreparable harm.

**Count II**
Unfair Competition/Use of Word, Term, Name, Symbol, or Device Combination
15 U.S.C. § 1125(a) 
**E-Diamond Logo**

62.     Diamond realleges and incorporates by reference paragraphs 1-61 of the Complaint.

63.     Defendant's use of the E-Diamond Logo for both related and/or identical goods and services as those offered by Diamond is likely to cause confusion, or to cause mistake as to the source of or association of Defendant's goods and services with Diamond, which provides such services under the Diamond Logo.

64. The E-Diamond Logo is confusingly similar to the Diamond Logo. Namely, the marks are confusingly similar in appearance and suggestion because both marks consist of a diamond shape featuring a green color.

65. Upon information and belief, likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, the geographic area of Defendant's use of the E-Diamond Logo overlaps with the geographic area of Diamond's use of the Diamond Logo.

66. Without permission, Defendant has used the E-Diamond Logo on its website to advertise its services.

67. Diamond never granted Defendant any license to use the E-Diamond Logo.

68. Defendant continues to use the E-Diamond Logo on its website to advertise its services.

69. The foregoing acts of the Defendant constitute unfair competition and false designation of origin in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

70. By reason of the foregoing acts of Defendant, Diamond believes that it is or is likely to be damaged by such acts. Defendant's acts, unless enjoined, will cause Diamond continuing irreparable harm.

**Count III**
Unfair Competition/Use of Word, Term, Name, Symbol, or Device Combination
15 U.S.C. § 1125(a)
**E-Diamond Logo + ETECH*ASSETS* Stylized Mark**

71. Diamond realleges and incorporates by reference paragraphs 1-70 of the Complaint.

72. Defendant's use of the compound mark comprising the E-Diamond Logo and the ETECH*ASSETS* stylized mark (collectively, the "ETECH Compound Mark") for both related and/or identical goods and services as those offered by Diamond is likely to cause confusion, or

to cause mistake as to the source of or association of Defendant's goods and services with Diamond, which provides such services under the Diamond Service Mark.

73.     The ETECH Compound Mark is confusingly similar to the Diamond Service Mark.  Namely, the marks are confusingly similar in appearance and suggestion because both marks include a distinct diamond shape including the color green situated directly adjacent to the left of, and approximately the same relative size to block text in a distinctive lime green color, combining to form a two-part compound mark ending in the same italicized word.

74.     Upon information and belief, likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, the geographic area of Defendant's use of the ETECH Compound Mark overlaps with the geographic area of Diamond's use of the Diamond Service Mark.

75.     Without permission, Defendant has used the ETECH Compound Mark on its website to advertise its services.

76.     Diamond never granted Defendant any license to use the compound mark comprising the E-Diamond Logo and the ETECH*ASSETS* stylized mark.

77.     Defendant continues to use the ETECH Compound Mark on its website to advertise its services.

78.     The foregoing acts of the Defendant constitute unfair competition and false designation of origin in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

79.     By reason of the foregoing acts of Defendant, Diamond believes that it is or is likely to be damaged by such acts. Defendant's acts, unless enjoined, will cause Diamond continuing irreparable harm.

**Count IV**
Unfair Competition/Use of Word, Term, Name, Symbol, or Device Combination
15 U.S.C. § 1125(a)
**ETECH About Us Text**

80.     Diamond realleges and incorporates by reference paragraphs 1-79 of the Complaint.

81.     Defendant's use of the ETECH About Us Text for both related and/or identical goods and services as those offered by Diamond is likely to cause confusion, or to cause mistake as to the source of or association of Defendant's goods and services with Diamond, which provides such services under the Diamond About Us Text.

82.     The Diamond About Us Text conveys to customers or potential customers of Diamond that Diamond partners with various organizations to "maximize the residual value of their Apple devices."

83.     The ETECH About Us Text is confusingly similar to the Diamond About Us Text.

84.     ETECH About Us Text conveys to customers or potential customers of Defendant that Defendant partners with various organizations to "capture the maximum residual value of their Apple equipment."

85.     The Diamond About Us Text conveys to customers or potential customers of Diamond that "Unlike recyclers and buy-back companies, we go beyond the transaction by coaching and guiding our customers toward a cycle of financial sustainability."

86.     ETECH About Us Text conveys to customers or potential customers of Defendant that "Unlike recyclers, buy-back, and IT asset companies …[w]e go beyond the point of purchase by coaching and guiding our customer towards financial sustainability."

87.     The Diamond About Us Text conveys to customers or potential customers of Diamond that "Our white-glove service, enhanced trade-in values, and dedicated account management makes it easy for organizations to refresh to the latest technology."

88.     ETECH About Us Text conveys to customers or potential customers of Defendant that "Our full white glove pickup service, enhanced trade-in solutions, and personalized dedicated account manager makes it easy for your organization to upgraded [sic] to the latest technology[.]"

89.     Without permission, Defendant has used the ETECH About Us Text on its website to advertise its services.

90.     Diamond never granted Defendant any license to use the Diamond About Us Text in the ETECH About Us Text.

91.     The foregoing acts of the Defendant constitute unfair competition and deceptive affiliation, connection, or association of Defendant with Diamond in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

92.     By reason of the foregoing acts of Defendant, Diamond believes that it is or is likely to be damaged by such acts. Defendant's acts, unless enjoined, will cause Diamond continuing irreparable harm.

**Count V**
Unfair Competition/False or Misleading Representation of Fact – 15 U.S.C. § 1125(a)
**ETECH Review Count**

93.     Diamond realleges and incorporates by reference paragraphs 1-92 of the Complaint.

94.     Defendant's use of the ETECH Review Count description in connection with the advertising of both related and/or identical goods and services as those offered by Diamond is

likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

95.     The ETECH Review Count facially represents that more than 12,754 customer reviews has resulted in ETECH receiving a rating of approximately 4.5 stars.

96.     Upon information and belief, likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, the ETECH Review Count image is a duplication of an image related to customer ratings on the website hosted at https://www.resellerratings.com.

97.     Upon information and belief, likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, the ETECH Review Count was copied from a webpage hosted on or accessible through https://www.gazelle.com, owned and operated by ecoATM, LLC.

98.     Upon information and belief, likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, there is no business relationship between Defendant and ecoATM, LLC.

99.     Upon information and belief, likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, sponsorship or approval of ecoATM, LLC's services by another person does not constitute sponsorship or approval of Defendant's services.

100.    Upon information and belief, likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, Defendant has fewer than 12,754 ratings on the website hosted at https://www.resellerratings.com.

101.    Upon information and belief, likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, Defendant has zero ratings on the website

hosted at https://www.resellerratings.com.

102.    Upon information and belief, likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, Defendant intended the ETECH Review Count to convey to customers and potential customers of Defendant the fact that Defendant had received at least 12,754 customer ratings.

103.    Upon information and belief, likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, Defendant intended the ETECH Review Count to convey to customers and potential customers of Defendant the fact that Defendant had received approximately a 4.5 star (out of 5 stars) rating by its former customers.

104.    The purported facts (number of reviews and star rating) intended to be conveyed by Defendant through display of the ETECH Review Count on the Former ETECH Website were false, and such false representations of fact were intended to induce customers and potential customers to conduct business with Defendant.

105.    The foregoing acts of the Defendant constitute unfair competition and false or misleading representation of fact in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

106.    By reason of the foregoing acts of Defendant, Diamond believes that it is or is likely to be damaged by such acts. Defendant's acts, unless enjoined, will cause Diamond continuing irreparable harm.

**Count VI**
Unfair Competition/False or Misleading Representation of Fact – 15 U.S.C. § 1125(a)
**ETECH Reviews**

107.    Diamond realleges and incorporates by reference paragraphs 1-106 of the Complaint.

108.    Defendant's use of the ETECH Reviews in connection with the advertising of both related and/or identical goods and services as those offered by Diamond is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

109.    The ETECH Reviews, at least in connection with display with the ETECH Review Count, facially display customer reviews implying positive interactions between Defendant and prior customers.

110.    Upon information and belief, likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, the ETECH Reviews were copied from a webpage hosted on or accessible through https://www.gazelle.com.

111.    Upon information and belief, likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, the ETECH Reviews were not related to any interaction between Defendant and any other person.

112.    Upon information and belief, likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, the ETECH Reviews were related to interaction between ecoATM, LLC and the person to whom each ETECH Review is attributed.

113.    Upon information and belief, likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, there is no business relationship between Defendant and ecoATM, LLC.

114.    Upon information and belief, likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, sponsorship or approval of ecoATM, LLC's services by another person does not constitute sponsorship or approval of Defendant's services.

115.     Upon information and belief, likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, Defendant intended the ETECH Reviews to convey to customers and potential customers of Defendant the fact that Lindsay from Marysville, OH had a positive interaction with Defendant.

116.     Upon information and belief, likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, Defendant intended the ETECH Reviews to convey to customers and potential customers of Defendant the fact that Jeneane from Santa Fe, OH had a positive interaction with Defendant.

117.     Upon information and belief, likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, Defendant intended the ETECH Reviews to convey to customers and potential customers of Defendant the fact that Crystal from Oxnard, CA had a positive interaction with Defendant.

118.     The purported facts (that Lindsey, Jeneane, and Crystal interacted with Defendant and that such interactions were positive) intended to be conveyed by Defendant through display of the ETECH Reviews on the Former ETECH Website were false, and such false representations of fact were intended to induce customers and potential customers to conduct business with Defendant.

119.     The foregoing acts of the Defendant constitute unfair competition and false or misleading representation of fact in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

120.     By reason of the foregoing acts of Defendant, Diamond believes that it is or is likely to be damaged by such acts. Defendant's acts, unless enjoined, will cause Diamond continuing irreparable harm.

**Count VII**
Unfair Competition/False or Misleading Representation of Fact – 15 U.S.C. § 1125(a)
**ETECH Kiosk Ad**

121.    Diamond realleges and incorporates by reference paragraphs 1-120 of the Complaint.

122.    Defendant's use of the ETECH Kiosk Ad in connection with the advertising of both related and/or identical goods and services as those offered by Diamond is likely to cause mistake.

123.    Defendant's use of the ETECH Kiosk Ad in connection with the advertising of both related and/or identical goods and services as those offered by Diamond misrepresented the nature, characteristics, and/or qualities of Defendant's services and/or commercial activities.

124.    The ETECH Kiosk Ad facially indicates that Defendant has kiosks that customers can use to exchange phones, tablets, and MP3 players for immediate cash.

125.    The ETECH Kiosk Ad induces customers and/or potential customers of Defendant to interact with Defendant over the Internet (rather than using a kiosk) because such customer or potential customer will receive more money in exchange for his or her electronic device(s).

126.    Upon information and belief, likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, Defendant did not and does not have kiosks that would exchange phones, tablets, and MP3 players for immediate cash.

127.    The purported facts (that Defendant had kiosks that offered lower amounts of money than interacting with Defendant online) intended to be conveyed by Defendant through display of the ETECH Kiosk Ad on the Former ETECH Website were false, and such false representations of fact were intended to induce customers and potential customers to conduct business with Defendant.

128.     The foregoing acts of the Defendant constitute unfair competition and false or misleading representation of fact in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

129.     By reason of the foregoing acts of Defendant, Diamond believes that it is or is likely to be damaged by such acts. Defendant's acts, unless enjoined, will cause Diamond continuing irreparable harm.

**Count VIII**
**Trade Dress Infringement – 15 U.S.C. § 1125(a)**
**Device Layer Photo**

130.     Diamond realleges and incorporates by reference paragraphs 1-124 of the Complaint.

131.     Defendant's use of the Device Layer Photo in connection with the advertising of both related and/or identical goods and services as those offered by Diamond is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

132.     The Device Trade Dress is used on the homepage of the Diamond Website.

133.     The Device Layer Photo was used on the homepage of the Former ETECH Website.

134.     The Device Layer Photo is substantially similar to Diamond's Device Trade Dress, and creates a deceptive affiliation, connection, or association of Defendant with Diamond:



Device Trade Dress                                    Defendant's
                                                     Device Layer Photo

135.    The Device Layer Photo is confusingly similar to the Device Trade Dress. Namely, they are confusingly similar in appearance and suggestion because both include what appears to be an iMac desktop computer in the background, and further both include a laptop computer disposed in the left foreground and a tablet device in the right foreground.

136.    Upon information and belief, likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, the geographic area of Defendant's use of the Device Layer Photo overlaps with the geographic area of Diamond's use of the Device Trade Dress.

137.    The Device Trade Dress is not functional.

138.    The foregoing acts of the Defendant constitute trade dress infringement and deceptive affiliation, connection, or association of Defendant with Diamond in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

139.    By reason of the foregoing acts of Defendant, Diamond believes that it is or is likely to be damaged by such acts. Defendant's acts, unless enjoined, will cause Diamond continuing irreparable harm.

**Count IX**
Trade Dress Infringement – 15 U.S.C. § 1125(a)
**ETECH Process**

140.    Diamond realleges and incorporates by reference paragraphs 1-139 of the Complaint.

141.    Defendant's use of the ETECH Process in connection with the advertising of both related and/or identical goods and services as those offered by Diamond is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

142.     The Process Trade Dress is used on the homepage of the Diamond Website.

143.     The ETECH Process was used on the homepage of the Former ETECH Website.

144.     The ETECH Process is substantially similar (step descriptions, color, shapes, arrows) to Diamond's Process Trade Dress, and creates a deceptive affiliation, connection, or association of Defendant with Diamond:



145.     The Process Trade Dress is not functional.

146.     The foregoing acts of the Defendant constitute trade dress infringement and deceptive affiliation, connection, or association of Defendant with Diamond in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

147.     By reason of the foregoing acts of Defendant, Diamond believes that it is or is likely to be damaged by such acts. Defendant's acts, unless enjoined, will cause Diamond continuing irreparable harm.

**Count X**
Trade Dress Infringement – 15 U.S.C. § 1125(a)
**New ETECH Process**

148.    Diamond realleges and incorporates by reference paragraphs 1-147 of the Complaint.

149.    Defendant's use of the ETECH Process in connection with the advertising of both related and/or identical goods and services as those offered by Diamond is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

150.    The Process Trade Dress is used on the homepage of the Diamond Website.

151.    The New ETECH Process is used on the homepage of the ETECH Website.

152.    The New ETECH Process is substantially similar (step descriptions, color, shapes) to Diamond's Process Trade Dress, and creates a deceptive affiliation, connection, or association of Defendant with Diamond:



153.    The Process Trade Dress is not functional.

154.     The foregoing acts of the Defendant constitute trade dress infringement and deceptive affiliation, connection, or association of Defendant with Diamond in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

155.     By reason of the foregoing acts of Defendant, Diamond believes that it is or is likely to be damaged by such acts. Defendant's acts, unless enjoined, will cause Diamond continuing irreparable harm.

**Count XI**
Trade Dress Infringement – 15 U.S.C. § 1125(a)
**ETECH Home Page Layout**

156.     Diamond realleges and incorporates by reference paragraphs 1-155 of the Complaint.

157.     Defendant's use of the ETECH Home Page Layout in connection with the advertising of both related and/or identical goods and services as those offered by Diamond is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

158.     The Diamond Home Page Layout is used on the homepage of the Diamond Website.

159.     The ETECH Home Page Layout was used on the homepage of the Former ETECH Website.

160.     The ETECH Home Page Layout is substantially similar to Diamond's Home Page Layout, and creates a deceptive affiliation, connection, or association of Defendant with Diamond.

161.     Both Home Page Layouts utilized horizontal sections of alternating white and gray, generally including, in order from top to bottom, a Trade-In section, a Streamlining section, a Maximizing Value section, and a Process section.

26

162.     Both Home Page Layouts utilize green header and footer stripes.

163.     Both Home Page Layouts utilize green heading fonts.

164.     Both Home Page Layouts state that customers can maximize the value of their trade-in with best pricing.

165.     Both Home Page Layouts include a listing of Apple devices, in order, of MacBook Air, MacBook Pro, Macbook, iPad, Mac Mini, and iMac.

166.     The Diamond Home Page Layout includes the following text:  "Diamond Assets is the most trusted Apple hardware trade-up partner. We pay organizations for their existing Apple devices so they have the means to fund their next Apple purchase."

167.     The ETECH Home Page Layout includes the following text:  "E-Tech Assets is the most trusted Apple solution-partner. We pay schools and organizations throughout all 50 states for their existing Apple devices so they have the means to purchase new Apple equipment."

168.     The Home Page Layout is not functional.

169.     The foregoing acts of the Defendant constitute trade dress infringement and deceptive affiliation, connection, or association of Defendant with Diamond in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

170.     By reason of the foregoing acts of Defendant, Diamond believes that it is or is likely to be damaged by such acts. Defendant's acts, unless enjoined, will cause Diamond continuing irreparable harm.

**Count XII**
Wisconsin Common Law Trademark Infringement
**E-Diamond Logo** 

171.    Diamond realleges and incorporates by reference paragraphs 1-170 of the Complaint.

172.    Defendant's use of the E-Diamond Logo for both related and/or identical goods and services as those offered by Diamond is likely to cause confusion, or to cause mistake as to the source of or association of Defendant's services with Diamond.

173.    The E-Diamond Logo is confusingly similar to the Diamond Logo.  Namely, the marks are confusingly similar in appearance and suggestion because both marks consist of a diamond shape featuring a green color.

174.    Upon information and belief, likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, the geographic area of Defendant's use of the E-Diamond Logo overlaps with the geographic area of Diamond's use of the Diamond Logo.

175.    Defendant's use of E-Diamond Logo is done intentionally, willfully and with harmful motive and reckless indifference to Diamond's rights.

176.    Defendant's use of E-Diamond Logo has caused and, unless enjoined, will continue to cause irreparable harm to Diamond.

177.    Defendant's activities as stated herein constitute an infringement of Diamond's common law trademark rights in its Diamond Logo within the state of Wisconsin and in violation of Wisconsin law.

**Count XIII**
Wisconsin Common Law Trademark Infringement
**E-Diamond Logo + ETECH*ASSETS* Stylized Mark**   

178.    Diamond realleges and incorporates by reference paragraphs 1-177 of the

Complaint.

179.    Defendant's use of the ETECH Compound Mark for both related and/or identical

goods and services as those offered by Diamond is likely to cause confusion, or to cause mistake

as to the source of or association of Defendant's services with Diamond.

180.    The ETECH Compound Mark is confusingly similar to the Diamond Service

Mark.  Namely, the marks are confusingly similar in appearance and suggestion because both

marks include a distinct diamond shape including the color green situated directly adjacent to the

left of, and approximately the same relative size to block text in a distinctive lime green color,

combining to form a two-part compound mark ending in the same italicized word.

181.    Upon information and belief, likely to have evidentiary support after a reasonable

opportunity for further investigation or discovery, the geographic area of Defendant's use of the

ETECH Compound Mark overlaps with the geographic area of Diamond's use of the Diamond

Service Mark.

182.    Defendant's use of the ETECH Compound Mark is done intentionally, willfully

and with harmful motive and reckless indifference to Diamond's rights.

183.    Defendant's use of the ETECH Compound Mark has caused and, unless enjoined,

will continue to cause irreparable harm to Diamond.

184.    Defendant's activities as stated herein constitute an infringement of Diamond's

common law trademark rights in its Diamond Service Mark within the state of Wisconsin and in

violation of Wisconsin law.

**Count XIV**
Wisconsin Common Law Unfair Competition
**ETECH Home Page Layout**

185.    Diamond realleges and incorporates by reference paragraphs 1-184 of the Complaint.

186.    Diamond's Home Page Layout is distinctive and has acquired secondary meaning and is thereby valid common law trade dress.

187.    Diamond is the rightful owner of all common law trade dress rights in the Diamond Home Page Layout.

188.    Defendant's use of the ETECH Home Page Layout to advertise related and identical services to those offered by Diamond is likely to cause confusion, or to cause mistake as to the source of or association of Defendant's services with Diamond.

189.    Defendant could have chosen any number of alternative non-infringing home page layouts, but instead chose to use individual distinctive features, and a distinctive collection and display of features, which is confusingly similar to Diamond's Home Page Layout and blemishes the distinctiveness of Diamond's trade dress.

190.    Defendant's acts constitute unfair competition, unfair trade practice and infringement of Diamond's common law rights and are in violation of the common law of the State of Wisconsin.

191.    Defendant's use of the ETECH Home Page Layout was done with willful intent, harmful motive and reckless indifference to Diamond's rights.

192.    Defendant has been unjustly enriched by its acts.

193.    Defendant's use of the ETECH Home Page Layout has caused and, unless enjoined, will continue to cause irreparable harm to Diamond.

## Prayer for Relief

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendant, with respect to all of the foregoing Counts as follows:

A. Immediately and preliminarily enjoining the Defendant, its servants, agents and employees, and all other persons in active concert or participation with the Defendant, and its successors and assigns, from directly or indirectly:

(1) using, reproducing, creating, distributing or publicly displaying any of Diamond's marks, names, logos or trade dress, including the Diamond Logo, Diamond Service Mark, Diamond Website Trade Dress, or any colorable imitation of any of them, in the advertising (including on the Internet), promotion, or rendering of its services;

(2) using, reproducing, creating, distributing or publicly displaying any of the E-Diamond Logo, the ETECH*ASSETS* stylized mark, the ETECH Compound Mark, the New ETECH Process, or any colorable imitation of any of them, in the advertising (including on the Internet), promotion, or rendering of its services;

(3) expressly or impliedly representing itself to customers, potential customers, suppliers, potential suppliers or the public to be affiliated in any way with Diamond;

(4) representing by words or conduct that any product or service provided, offered for sale, sold, advertised, or rendered by the Defendant is supplied, authorized, sponsored, or endorsed by or otherwise connected with Diamond;

(5) otherwise infringing the Diamond Logo, Diamond Service Mark, Diamond Website Trade Dress; or

(6) competing unfairly with Diamond in any manner by improperly using the Diamond Logo, Diamond Service Mark, Diamond Website Trade Dress, or any colorable imitation of any of them, and/or any mark that is likely to cause consumer confusion as to the source of Defendant's services;

B. Holding Defendant's acts constitute unfair competition, misrepresentation, trade dress infringement, and trademark infringement, as described above;

C. Holding Defendant's acts constitute willful unfair competition, misrepresentation, trade dress infringement, and trademark infringement, as described above;

D. Holding this case exceptional;

E. Permanently enjoining the Defendant, its servants, agents and employees, and all other persons in active concert or participation with the Defendant, and its successors and assigns, from directly or indirectly:

(1) using, reproducing, creating, distributing or publicly displaying any of Diamond's marks, names, logos or trade dress, including the Diamond Logo, Diamond Service Mark, Diamond Website Trade Dress, or any colorable imitation of any of them, in the advertising (including on the Internet), promotion, or rendering of its services;

(2) using, reproducing, creating, distributing or publicly displaying any of the E-Diamond Logo, the ETECH*ASSETS* stylized mark, the ETECH

Compound Mark, the Device Layer Photo, the ETECH About Us Text, the ETECH Process, the New ETECH Process, the ETECH Home Page Layout, or any colorable imitation of any of them, in the advertising (including on the Internet), promotion, or rendering of its services;

(3) expressly or impliedly representing itself to customers, potential customers, suppliers, potential suppliers or the public to be affiliated in any way with Diamond;

(4) representing by words or conduct that any product or service provided, offered for sale, sold, advertised, or rendered by the Defendant is supplied, authorized, sponsored, or endorsed by or otherwise connected with Diamond;

(5) falsely representing by words or conduct that any product or service provided, offered for sale, sold, advertised, or rendered by the Defendant has been or is sponsored or endorsed or reviewed by customers, potential customers, suppliers, potential suppliers or the public;

(6) falsely representing by words or conduct that Defendant's services can be utilized through facilities that do not exist (e.g., through the ETECH Kiosk Ad);

(7) inducing customers, potential customers, suppliers, potential suppliers or the public to interact with Defendant through one medium (e.g., the Internet) by false representations about another medium (e.g., kiosks);

(8) otherwise infringing the Diamond Logo, Diamond Service Mark,

Diamond Website Trade Dress; or

(9) competing unfairly with Diamond in any manner by improperly using the Diamond Logo, Diamond Service Mark, Diamond Website Trade Dress, or any colorable imitation of any of them, and/or any mark that is likely to cause consumer confusion as to the source of Defendant's services;

F. Ordering the Defendant to deliver up for destruction all labels, signs, prints, insignia, letterhead, brochures, business cards, invoices and any other written or recorded material or advertisements in its possession or control containing the E-Diamond Logo and/or the ETECH*ASSETS* stylized mark, or any colorable imitation of either of them;

G. Ordering the Defendant to file with this Court and serve on Diamond, within thirty (30) days from the date of entry of any restraining order and/or injunction, a report in writing, under oath, setting forth in detail the manner and form in which the Defendant has complied with the terms of the respective restraining order and/or injunction;

H. Ordering the Defendant to pay Diamond:

(1) all profits, gains and advantages obtained by Defendant from the Defendant's unlawful conduct, including profits and corrective advertising damages in an amount to be determined at trial;

(2) all monetary damages sustained and to be sustained by Diamond as a consequence of Defendant's unlawful conduct, including lost profits, in an amount to be determined at trial;

(3) enhanced damages (e.g., pursuant to 15 U.S.C. § 1117(a)); and

(4) Diamond's costs and disbursements incurred in connection with this

action, including reasonable attorneys' fees; of which nothing pleaded herein shall constitute an election of remedies;

I. Assessing court costs against the Defendant; and

J. Awarding such other relief as this Court may deem just and proper.

## **Jury Demand**

Pursuant to Fed. R. Civ. P. 38(b), Diamond hereby demands and requests a trial by jury of all claims and issues so triable.

Date:            July 20, 2018            Respectfully submitted,

By:   s/Garet K. Galster
Garet K. Galster
Melissa A. Spindler
SMITH KEANE LLP
1130 James Drive, Suite 104
Hartland, WI  53029
Telephone: 262.563.1438
Facsimile: 262.563.1439
gkg@keaneip.com
mas@keaneip.com
docketing@keaneip.com

*Attorneys for Plaintiff*
*Diamond Assets, LLC*

35